UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| GEORGE W. FEREBEE, | ) | CIV. 04-5123 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JEROMEY SMITH, JEANIE MELTON, | ) | |
| MIKE ANDERSON, and MARK STEELE, | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court are a Motion for Summary Judgment [doc. #135] by Defendants Jeromey Smith, Jeanie Melton, Mike Anderson, and Mark Steele;[1] a motion for hearing [doc. #157] by the Plaintiff; and a Motion for Summary Judgment on Grounds of Qualified Immunity [doc. #173] by the Defendants.  The Court previously conducted a hearing regarding the motion for summary judgment, noting its concern that the motion and supporting documents nowhere explicitly addressed the qualified immunity issue, and that the pro se Plaintiff could be disadvantaged by the omission.  At the Court's direction, the Defendants filed the second motion, explicitly seeking summary judgment based on qualified immunity. The Plaintiff then filed a response to that motion.  These matters now are ripe for disposition.[2] For the reasons that follow, the Court grants the motions for summary judgment.

---

[1]Hereafter, the Court will refer to Smith, Melton, Anderson, and Steele individually, or collectively as "the Defendants."

[2]The Defendants' second motion [doc. #173] and supporting memorandum [doc #174] are a clarification of the grounds for summary judgment set forth in the first motion [doc. #135] and supporting memorandum [doc. #136].  Accordingly, the Court will consider the two motions together in ruling on the issues presented.

## I. Background

The evidence,[3] viewed in the light most favorable to the Plaintiff, is:

On December 30, 2002, the Plaintiff had several open fires burning at 11495 Gillette Prairie Road, Hill City, South Dakota, an area within the Black Hills Fire Protection District. While driving by on the way to a 9-1-1 call, Smith, a Pennington County Sheriff's Deputy, saw "a lot of smoke" rising from the area around the Plaintiff's residence, coming from both a burn barrel and from other places on the property. Smith contacted dispatch and learned the Plaintiff had only a permit to burn in a barrel.

Smith later returned to the Plaintiff's property and was met there by former Defendants James Strain and Robert Lehmann, Fire Management Officers with the South Dakota Department of Agriculture, and Darwin Coy and Jennifer Fox, firefighters with the Hill City Fire Department.[4] Smith and the firefighters saw smoke still rising from the property. The five entered the property to investigate the alleged burning without a valid permit. Soon after entering, the five observed the Plaintiff burning pine needles and other debris "in a draw well

---

[3]The Plaintiff filed a response to the motion [doc. #149], and five appendices supporting the response, which included affidavits [doc. #s 150-51], a response to the Defendants' statement of material facts [doc. #152], a statement of material facts [doc. #153], and a memorandum in opposition [doc. #154]. The Plaintiff later filed a response [doc. #175] and a memorandum [doc. #176] in opposition to the second motion for summary judgment. While the Plaintiff disputes several of the material facts cited by the Defendants, his response to the Defendants' statement of material facts [doc. #152] presents argument, rather than facts to rebut those of the Defendants. The Plaintiff's own statement of material facts [doc. #153], although providing factual statements, largely fails to contradict the Defendants' facts, confirms the Defendants' facts, or provides irrelevant and immaterial assertions that do not create genuine issues of material fact.

[4]For the sake of conciseness, the Court hereafter will refer to these four former Defendants individually or as the "firefighters."

away from" the residence,[5] both in a burn barrel and in piles on the forest floor in the area around the barrel.  At least fifty square feet of the forest floor had been burned.  Strain and Lehmann determined that the Plaintiff was burning outside the scope of his permit and requested Smith cite the Plaintiff for illegal burning.  The firefighters extinguished the fires.

Smith attempted to cite the Plaintiff, asking for information from the Plaintiff so he could issue the citation.  Smith also asked to see the Plaintiff's burn permit.  Smith noted the permit specified one burn barrel was permitted.  The Plaintiff would not provide any information to Smith and would not accept the citation.  Because the Plaintiff would not comply, Smith ended up placing the Plaintiff under arrest.  Smith informed the Plaintiff's wife that she could post bond for him for $300.  Smith placed the Plaintiff in his patrol car, read him his Miranda rights, and transported him to the Pennington County Jail ("the Jail").  At no time did Smith or any former Defendants enter the home or other buildings on the property.

The Plaintiff claims that he had verbal permission to burn outside a barrel from Joe Lowe, Wildland Fire Coordinator for the South Dakota Department of Agriculture.  The Plaintiff has not produced written proof permitting him to burn outside a barrel on that date.

At the Jail, the Plaintiff refused to fill out booking information.  At some point, Melton informed the Plaintiff that his wife was there, bond was posted, and, if he would answer a few more questions, he would be released.  The Plaintiff still refused to cooperate.  Three hours later, the Plaintiff agreed to cooperate.  As to Anderson, no specific claim is made against him

_____

[5]In his brief opposing the motion for summary judgment by Strain and Lehmann, the Plaintiff argued that the Defendants entered his property, "most, if not all, of which could readily be defined as curtilage."  He provided no evidence in support, while the Defendants offered affidavits and statements of fact describing the location of the fires as well away from the home.

3

in the Plaintiff's Complaint, but the Plaintiff has made allegations against Anderson at different times during the proceedings in this case, and those claims will be examined below.[6]

The other incident bearing on this case involved former Defendants Steve Hobart ("Steve"), Nicholas Hobart ("Nicholas"), and George Clinton ("Clinton"). See doc. #67. The relevant facts are recited here because they relate to some of the Plaintiff's claims against these Defendants. On December 29, 1999, Steve filed a "Verified Petition for Protection Order (Stalking)" against the Plaintiff. Former Defendant and Seventh Judicial Circuit Magistrate Judge Michael O'Connor granted the petition, signing an Ex Parte Temporary Order of Protection Restraining the Respondent from Stalking ("Protection Order"). The Protection Order commanded the Plaintiff to stay more than 500 feet away from Steve's family. A circuit court judge later ordered the Protection Order continue in full force until further order.

The Protection Order was still in effect on March 2, 2003. On that date, Clinton saw the Plaintiff on Steve's property. At Steve's request, Nicholas went to try to see whether the Plaintiff was on Steve's land. Nicholas saw the Plaintiff walk on Steve's driveway, then walk toward the Plaintiff's own land. Nicholas videotaped the Plaintiff doing so. Steve reported the possible violation of the Protection Order to the Pennington County Sheriff's Department, and Smith responded to the report. When Smith arrived, he viewed the videotape. Smith made a

---

[6]The Plaintiff challenges the statement that he would not fill out booking information by asserting that he completed the information with the "innards of a ball point pen." He offers no evidence in support, while the Defendants support this statement by citing the transcript of the Plaintiff's trial for burning without a permit, wherein the Plaintiff was asked, "You wouldn't fill out any booking information at the jail either, would you?" In response, the Plaintiff admitted that he "said nothing [and] did nothing further" after he was told during his arrest that he could not go into his house and use the telephone.

report based on information from Steve and viewed footprints the Plaintiff allegedly had made within 500 feet of Steve's land.  Smith also obtained statements from Nicholas and Clinton.

On March 4, 2003, Smith called to arrange a time to talk to the Plaintiff about the incident.  Smith spoke to the Plaintiff's wife and explained why he needed to talk to the Plaintiff.  Smith tried unsuccessfully to call the Plaintiff again later that day.  Smith later requested an arrest warrant be issued for the Plaintiff.  The warrant was issued on March 12, 2003, and specified that no bond was allowed.  On March 15, 2003, Smith and another deputy went to the Plaintiff's residence with the warrant.  Smith contacted the Plaintiff and his wife while they were walking down the road.  Smith informed them that he had an arrest warrant for the Plaintiff.  After a brief discussion, Smith arrested the Plaintiff.  During the arrest, Smith told the Plaintiff "there was no bond and that he would be in jail at least until Monday," and "he would be going before a judge and that possibly he would have a bond set at that time[,] giving him the opportunity to get out of jail."  Smith transported the Plaintiff to the Jail.  On March 17, 2003, the Plaintiff had an initial appearance before a state-court magistrate.  The magistrate ordered the Plaintiff released on his own personal recognizance.  The Plaintiff was processed out of the Jail between five and seven hours later.

## II.  Discussion

**Summary Judgment and Qualified Immunity Standards**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether summary judgment should issue, the facts and

5

inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law.  Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth *specific* facts showing that a genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The Supreme Court has instructed that summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87.

The doctrine of qualified immunity shields government officials from liability so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity is an immunity from suit rather than a mere defense to liability, which is effectively lost if a case is erroneously permitted to go to trial."  Avalos v. City of Glenwood, 382 F.3d 792, 798 (8th Cir. 2004) (citations and internal quotations omitted).  "Qualified

6

immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  Id. (citation omitted).

The initial inquiry in the qualified immunity analysis is this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the facts alleged demonstrate a constitutional violation, the second inquiry "is to ask whether the right was clearly established"; that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 201-02.  Third, the Court must determine if, taking the facts in the light most favorable to the Plaintiff, "there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged actions violated that right.  Foulks v. Cole County, 991 F.2d 454, 456 (8th Cir. 1993).

The Court has reviewed the parties' submissions on the motions for summary judgment.  The Defendants' memoranda supporting the motions follows the logical order in addressing the potential claims at issue, and the Court generally will follow the Defendants' format in addressing the issues or potential issues presented.

## A.    Fire Incident

In his first claim, the Plaintiff contends his rights were violated by Smith, Melton, and Anderson, as well as other former Defendants.  See Complaint § IV.  Because some of the claims involve different conduct, the Court will address the varied claims separately.

The Plaintiff does not cite to specific constitutional or statutory provisions that support his claims.  However, as the Court has noted previously in addressing other Defendants'

motions for summary judgment, a pro se plaintiff's complaint is entitled to liberal construction.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).  Liberally construing the Plaintiff's Complaint, the Court concludes the Plaintiff is attempting to bring an action under 42 U.S.C. § 1983 against these Defendants.  Furthermore, the parties have briefed the instant motion as addressing section 1983 claims.  To present such a claim, a plaintiff must show a state actor caused the plaintiff to suffer a deprivation of a constitutional right or privilege.  See 42 U.S.C. § 1983.

### 1.    Deputy Smith

#### a.  Fourth Amendment Claims

##### i.  Unreasonable Searches

The Plaintiff's Complaint contains numerous allegations against Smith.  First, the Plaintiff alleges Smith and the firefighters trespassed onto the Plaintiff's private property, in violation of the Plaintiff's constitutional rights.  Liberal construction of the this claim indicates the Plaintiff's section 1983 claim would have to be premised on a violation of his Fourth Amendment rights against unreasonable searches.  Also, during his deposition, the Plaintiff claimed Smith violated his constitutional rights by removing a pocket knife from the Plaintiff's pocket when they arrived at the Jail.

In its previous Memorandum Opinion and Order granting summary judgment to the firefighters, the Court noted the entirety of the Plaintiff's claim against them was that they were "[a]lso [] trespassing with Deputy Smith" on December 30, 2002.  See doc. #164 at 6. The Court concluded the Plaintiff had not alleged a Fourth Amendment constitutional violation by those former Defendants.  See id. at 7.

8

As explained above, the threshold issue with regard to qualified immunity is whether the facts show the Defendant's actions violated a constitutional right.  Saucier, 533 U.S. at 201.  "The § 1983 claimant has the burden of proving that the search violated the Fourth Amendment.  This is true even when the search was not supported by a warrant and the issue is whether the search was justified by an exception to the warrant requirement."  1 Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 3.21[A] (4th ed. 2005).

Liberally construed, the Plaintiff's first allegation against Smith is that Smith violated his Fourth Amendment right to be free from unreasonable searches when Smith entered onto the Plaintiff's property.  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV; see Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996) (noting the Fourth Amendment applies to States through the Fourteenth Amendment).  The "chief evil" against which the Fourth Amendment protects is the "physical entry of the home."  Payton v. New York, 445 U.S. 573, 585 (1980).  "The Fourth Amendment protects against unlawful searches of homes and persons," Frey v. Leapley, 931 F.2d 1253, 1255 (8th Cir. 1991), and "protects the curtilage of an individual's residence, but not surrounding open fields," United States v. Boyster, 436 F.3d 986, 991 (8th Cir. 2006).  An open field "may include any unoccupied or undeveloped area outside of the curtilage," and "need be neither 'open' nor a 'field' as those terms are used in common speech."  Oliver v. United States, 466 U.S. 170, 180 n.11 (1984).  "[T]he government's intrusion upon the open fields is not one of those 'unreasonable searches' proscribed by the text of the Fourth Amendment," id. at 177, and entry thereupon requires no warrant, United States v. Eng, 753 F.2d 683, 686 (8th Cir. 1985).

9

The Supreme Court has instructed that "curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987).

In this case, the evidence shows the area where Smith and the firefighters entered was an open field. The Plaintiff was burning pine needles "in a draw well away from" the residence, showing the burning area was not in close proximity to the home. No evidence is presented to show the area was in an enclosure surrounding the home. The Plaintiff testified in his deposition that he was raking and burning pine needles in an effort to keep the pine needles out of the hay he fed his cattle, see Ferebee Dep. (doc. #127-2) at 13:14-15:9, indicating the "nature of the use" was for grazing, or for harvesting or storing hay. The Plaintiff also admitted he was burning pine needles out in the open. See id. at 20:9-11. This use indicates the area is more akin to an open field than it is to the curtilage of the home. Also, the Plaintiff has not presented evidence that he had taken steps to protect the area from observation by passers by. In sum, this area was not "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." Dunn, 480 U.S. at 301. Because the Plaintiff cannot show Smith violated the Fourth Amendment by entering onto the property, Smith entitled to qualified immunity, and is granted summary judgment on the Plaintiff's claim against him based on an unreasonable search.

Even assuming that the Plaintiff could show the Defendants violated his constitutional right to be free from unreasonable searches, the second inquiry under the qualified immunity

10

analysis requires the Plaintiff show the right was clearly established, or "whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

Saucier, 533 U.S. at 201-02.  This objective element "requires the court to look beyond the

generalized constitutional protection, such as the right to be free of unreasonable searches and

seizures, and to determine whether the law is clearly established in a more particularized

sense."  Kerman v. City of New York, 261 F.3d 229, 236 (2d Cir. 2001) (citing Anderson v.

Creighton, 483 U.S. 635, 640 (1986)).  "The contours of the right must be sufficiently clear

that a reasonable official would understand that what he is doing violates that right."  Id. at

236-37 (quoting Anderson, 483 U.S. at 640).  The particular right the Plaintiff asserts, the right

to be free from a warrantless entry into an open field by a deputy to investigate an open fire, is

not clearly established.[7]  Thus, qualified immunity applies to shield Smith from this lawsuit.

Furthermore, to the extent the Plaintiff presents a claim for a constitutional violation

based on Smith's removal of the pocket knife from the Plaintiff's pocket, the Plaintiff's claim

fails.  "[O]nce the defendant is lawfully arrested and is in custody, the effects in his possession

at the place of detention that were subject to search at the time and place of his arrest may

lawfully be searched and seized without a warrant even though a substantial period of time has

---

[7]The Court has reached the same conclusion, that the Plaintiff has failed to allege a
violation of a constitutional right, as to all the Plaintiff's claims under 42 U.S.C. § 1983.  Thus,
"there is no necessity for further inquiries concerning qualified immunity" because the Plaintiff
has failed to allege any constitutional rights were violated.  Saucier, 533 U.S. at 201.  However,
even assuming the Plaintiff has stated a violation of a constitutional right in one of his many
claims, the Court concludes the Plaintiff has failed to show the various rights he claims were
violated were "clearly established," or that "it would be clear to a reasonable officer that his
conduct was unlawful in the situation he confronted."  Id. at 201-02.  For this additional reason,
the Court concludes the Defendants are entitled to qualified immunity, and will not repeat this
holding at the end of the analysis of each claim.

elapsed . . . ." United States v. Edwards, 415 U.S. 800, 807 (1974).  Warrantless searches

incident to an arrest are justified by the reasonableness of searching for weapons or

instruments of escape.  Curd v. City Court of Judsonia, Ark., 141 F.3d 839, 842 (8th Cir.

1998).  "Searches of the person and those articles 'immediately associated' with the person

may be made either at the time of arrest or when the accused arrives at the place of detention."

Id. at 843.  The removal of the knife did not violate the Plaintiff's Fourth Amendment rights,

and Smith is entitled to qualified immunity on this claim.

### ii.  Unreasonable Seizure

The Plaintiff also appears to argue Smith violated his constitutional rights by removing

the Plaintiff from his property without an arrest warrant.  See Complaint at 4.  However, the

Fourth Amendment does not require that all arrests be supported by a warrant therefor.  "If an

officer has probable cause to believe that an individual has committed even a very minor

criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the

offender."  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); see Lawyer v. City of

Council Bluffs, 361 F.3d 1099, 1105-06 (8th Cir. 2004) (citing Atwater and noting that, in the

context of traffic stops, officers are permitted to make warrantless arrests if probable cause

exists to believe arrestee has committed an offense).  Also, South Dakota law permits officers

to arrest individuals without a warrant if probable cause exists to believe the individual has

committed a Class I misdemeanor.  SDCL 23A-3-2.  Under SDCL 34-25-16, burning debris

within the Black Hills forest fire protection district without a permit is a Class I misdemeanor.

"Probable cause to conduct a warrantless arrest exists when at the moment of arrest

police have knowledge of facts and circumstances grounded in reasonably trustworthy

information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001).  The Court concludes Smith had probable cause to arrest the Plaintiff.  Upon arriving at the Plaintiff's property, Smith saw the Plaintiff burning pine needles on the ground, outside his burn barrel.  Before arriving at the property, Smith had learned from dispatch that no one in that area had been authorized to burn debris outside a barrel.  See Klingler v. United States, 409 F.2d 299, 303 (8th Cir. 1969) (noting the details furnished an officer by police radio can is "reasonably trustworthy information upon which to base his actions").  The Plaintiff would not or could not produce a permit that granted him permission to burn debris on the ground.  Also, Strain and Lehmann knew the Plaintiff did not have such a permit, and they informed Smith that the Plaintiff's conduct violated SDCL 34-35-16.  Although the Plaintiff claims he had verbal permission to burn outside the barrel from Joe Lowe, he has not produced evidence that he had permission to burn outside a barrel that day.  The "reasonably trustworthy information" available to Smith, from his own investigation and observation, as well as that received from Strain and Lehmann, gave Smith probable cause to believe that he had observed a violation of SDCL 34-35-16, a Class I misdemeanor.  Although originally he only planned to cite the Plaintiff for the violation, Smith was authorized to arrest the Plaintiff.  Thus, the warrantless arrest was lawful, and Smith is entitled to qualified immunity.

### iii.  Excessive Force

The Plaintiff alleges Smith used excessive force during the Plaintiff's arrest and upon arriving at the Jail.  See Complaint at 4; Ferebee Dep. (doc. #127-2) at 35:13-20, 36:9-20.  The Plaintiff's claim, liberally construed, is brought under the Fourth Amendment.  See Wilson v.

13

Spain, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive- force claims that 'arise[ ] in the context of an arrest or investigatory stop of a free citizen,' while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive- force claims brought by convicted criminals serving their sentences.") (citations omitted).  The test applied in Fourth Amendment excessive force cases "is whether the amount of force used was objectively reasonable under the particular circumstances." Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994).  "The test includes allowance for the fact that officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary." Id. (citation omitted).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Id. at 1355 (internal quotations omitted).

In his Complaint, the Plaintiff alleges Smith "'forcibly' removed [him] from [his] private property," "grabbed [his] arm, swung [him] around and handcuffed [him] from behind," and "escorted [him] approximately five hundred (500) feet across [his] private property." See Complaint at 4.  Smith then allegedly belted the Plaintiff into the police vehicle "for a very uncomfortable one hour ride to town" in which "[e]very curve in the road and there are many was painful." Id.  Upon arriving at the Jail, Smith allegedly tried to remove the Plaintiff from the vehicle without removing the handcuffs. Id.  In support of the allegations in the Complaint, the Plaintiff testified the handcuffs bruised his wrists, see Ferebee Dep. (doc. #127-2) at 37:5, but has pointed to no other evidence to support his excessive force claim.

14

Smith is entitled to qualified immunity on this claim.  The Eighth Circuit has opined that more than an allegation of physical pain is necessary to state a claim for excessive force: "We do not believe [that] allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support [a] claim of excessive force." Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990).  "Foster instructs us, therefore, that for the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries." Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003).  The evidence before the Court indicates the Plaintiff suffered bruises to his wrists, but no other evidence of physical injury or abuse, which is insufficient to state a Fourth Amendment excessive force claim.  Because the Plaintiff has failed to allege a violation of his Fourth Amendment rights, Smith is entitled to qualified immunity on this claim.

### iv.  Deprivation of Liberty

The Plaintiff claims he was deprived of his liberty during his arrest.  See Ferebee Dep. (doc. #127-2) at 27:3-12.  To the extent the Plaintiff is making a claim under the "substantive due process" provisions of the Fourteenth Amendment, the Court will briefly address the same. In Albright v. Oliver, 510 U.S. 266, 273 (1994), the Supreme Court observed, "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"  Because "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it," id. at 274, the Fourth Amendment, rather than the Fourteenth Amendment's "substantive due process," applies to claims of liberty deprivations resulting

15

from an arrest, id. at 274-75.  The Plaintiff has not stated a claim under the Fourteenth Amendment, and Smith is entitled to qualified immunity.

### b.  Sixth Amendment Claim

Although not explicit in his Complaint, the Plaintiff claimed during his deposition that his constitutional rights were violated when he was not informed of the charges against him at the time of his arrest.  See Ferebee Dep. (doc. #127-2) at 26:19-27:2, 37:16-18.  Liberally construing this allegation, the Court concludes the Plaintiff is attempting to present a cause of action for violation of his Sixth Amendment right to be advised of the nature and cause of the accusation against him which, again, is applicable to the states through the Fourteenth Amendment.  See U.S. Const. amend. VI; Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

The facts that the Plaintiff alleges against Smith do not amount to a constitutional violation.  "The notice requirements of the Sixth Amendment, like other rights provided [for] in the Amendment, are designed to enable a criminal defendant to present a full defense." Wilson v. City of Chicago, 707 F. Supp. 379, 382 (N.D. Ill. 1989) (citations omitted).  The Sixth Amendment applies to "criminal prosecutions," and no such prosecution had begun at the time of the Plaintiff's arrest.  See U.S. Const. amend. VI; see also Kirby v. Illinois, 406 U.S. 682, 689-90 (1972) ("The initiation of judicial criminal proceedings . . . [is the point] that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable"); Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000) (same); Martin v. Malhoyt, 830 F.2d 237 (D.C. Cir. 1987) (holding four-hour delay between arrest and informing arrestee of charge does not constitute a violation of the Sixth Amendment); Kladis v. Brezek, 823 F.2d 1014, 1018 (7th Cir. 1987) (same as Kirby, Jones).

16

The Plaintiff was informed of the charge against him before his trial on the charge, and the trial ended in a hung jury. See Ferebee Dep. (doc. #127-2) at 71:15-16. The Plaintiff has failed to allege a violation of his Sixth Amendment right to be informed of the nature of the charge against him. Thus, Smith is entitled to qualified immunity on that claim.

### c. Trespass Claim

Smith moves for summary judgment on any claim the Plaintiff potentially might have made against him for trespass under South Dakota law. This Court previously granted the firefighters' motions for summary judgment as to any trespass claim the Plaintiff may have brought against them. See doc. #164. This Court noted that, in most cases, when summary judgment is granted on a plaintiff's federal claims, a plaintiff's pendent state claims normally are dismissed without prejudice. See Ivy v. Kimbrough, 115 F.3d 550, 552-53 (8th Cir. 1997). However, this Court also noted the Eighth Circuit has affirmed a district court's decision to exercise supplemental jurisdiction in a case where the plaintiff's "federal and state claims relied on the same core facts." See id. at 553. This Court observed that only a liberal construction of the Complaint served to differentiate between a state-law trespass claim and a section 1983 claim, as both were presented in the same sentence in the pro se Complaint.

Any potential state-law claim against Smith arises out of the same core facts (and the same sentences) as the federal claims against him. In the Court's opinion, judicial economy, convenience, and fairness mandate the discretionary exercise of supplemental jurisdiction over the Plaintiff's trespass claim, as well as its dismissal. Under South Dakota law, "an officer of the law who goes upon private property while investigating a crime is not a trespasser." State v. Frey, 440 N.W.2d 721, 726 (S.D. 1989). As explained more fully in its analysis in its

17

previous opinion [doc. #164 at 10-12], the Court concludes that summary judgment must be granted as to any claim the Plaintiff may have against Smith for trespass.

### 2.      Correctional Officers Melton and Anderson

Ferebee claims Melton and Anderson violated his constitutional rights after he arrived at the Jail on December 30, 2002.  See Complaint § IV.  After arriving at the Jail, the Plaintiff refused to answer booking questions.  Because the Plaintiff refused to answer questions, officers put him in a holding cell.  Melton allegedly "escorted [the Plaintiff] to the 'hole' and would not let [him] out, would not let [him] talk to an attorney and would not let [him] talk to [his] wife who had supposedly posted bail until [he] agreed to 'cooperate' (answer her questions)."  See Complaint at 4.  Anderson allegedly went to the Plaintiff's cell and asked whether he was willing to cooperate.  The Plaintiff also argues the officers refused to allow him to speak to an attorney.  See Ferebee Dep. (doc. #127-2) at 49:3-6; doc. #154 at 16-17.

### a.  Fifth Amendment Claim

Liberally construed, the Plaintiff's Complaint appears to possibly present a claim that Melton and Anderson violated his Fifth Amendment rights, made applicable to the States by the Fourteenth Amendment, Blalock v. Lockhart, 898 F.2d 1367, 1371 (8th Cir. 1990), by asking him routine booking questions, putting him in a holding cell until he answered the booking questions, or by asking him whether he was ready to cooperate.  "Under Miranda, the government is prohibited from using statements made during custodial interrogation unless the defendant has been previously advised of his Fifth Amendment privilege against compulsory self incrimination and right to an attorney."  United States v. Lockett, 393 F.3d 834, 837 (8th Cir. 2005).  "Interrogation does not generally include routine processing-type questions such

18

as the name and address of a suspect." <u>Id.</u> (citation and internal quotations omitted).  Further, "[t]he reading of <u>Miranda</u> warnings is a procedural safeguard rather than a right arising out of the fifth amendment itself, [and] the remedy for a <u>Miranda</u> violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action." <u>Warren v. City of Lincoln</u>, 864 F.2d 1436, 1442 (8th Cir. 1989) (en banc).  The Plaintiff's claim against Melton and Anderson, at least with regard to the fire incident, indicates he is alleging the two officers violated the procedural safeguards provided in <u>Miranda</u> warnings.  Taken in the light most favorable to the Plaintiff, the facts alleged do not show the officers' conduct violated the Plaintiff's constitutional rights.  <u>Saucier</u>, 533 U.S. at 201.  Because the exclusive remedy for <u>Miranda</u> violations is exclusion of evidence obtained in violation thereof, and not a section 1983 action, Melton and Anderson are entitled to qualified immunity on this claim.

### b.  Sixth Amendment Claim

Liberally construed, the Plaintiff's allegations against Melton and Anderson also might allege a violation of his right to counsel under the Sixth Amendment.  However, to the extent the claim could be construed as a Sixth Amendment claim, Melton and Anderson are entitled to qualified immunity, because the Plaintiff has failed to show his Sixth Amendment rights were violated.  "[T]he Sixth Amendment right to counsel 'does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" <u>Von Kahl v. United States</u>, 242 F.3d 783, 789 (8th Cir. 2001) (quoting <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991)).  The time of the incidents alleged in the Complaint indicate the

19

prosecution of the Plaintiff had not begun.  Thus, his Sixth Amendment rights were not

violated, and Melton and Anderson are entitled to qualified immunity.

**B.      Protection Order Incident**

In the second claim in the Complaint, the Plaintiff contends his constitutional rights

were violated by Smith, Steele, and "unknown Pennington County Jailers," as well as other

former Defendants.  The claims arise out of the incidents occurring in March 2003, related to

the Protection Order that Steve Hobart had gotten against the Plaintiff and the Plaintiff's arrest.

See Complaint § IV; id. at 5.  Again, because some of the claims against the Defendants

involve different conduct, the Court will address the various potential claims separately.

**1.      Deputy Smith**

**a.  Fourth Amendment Claim**

The Plaintiff first claims Smith violated his constitutional rights during the events

surrounding his March arrest.  See Complaint § IV, id. at 5.  In his deposition, the Plaintiff

stated Smith violated his Fourth Amendment rights when Smith "requested an invalid warrant

of arrest."  See Ferebee Dep. (doc. #127-2) at 52:5-53:9.  Thus, the Court will first analyze this

claim as one based on a violation of the Plaintiff's Fourth Amendment rights.

To the extent the Plaintiff's claim is based on Smith's act of requesting the warrant, as

opposed to executing the warrant, the evidence does not indicate Smith requested the warrant

at all; instead, he presented his investigative report to Deputy State's Attorney Jesse Sondreal,

a former Defendant, who made the decision to charge the Plaintiff.  Further, the Court finds no

legal authority supporting a section 1983 claim based upon the act of requesting a warrant.

Given the Fourth Amendment's warrant requirement, it would seem the act of requesting a

20

warrant (had Smith been the one who actually requested the warrant) could hardly be an act upon which a section 1983 action could be based.

Even under a liberal construction of the Complaint, however, and assuming the Plaintiff is presenting a claim based on Smith's execution of the warrant, Smith is entitled to qualified immunity.  A warrant shields a law enforcement officer from section 1983 liability for executing it, "unless a reasonably well-trained officer would have known that the arrest was illegal despite the magistrate's authorization."  Stigall v. Madden, 26 F.3d 867, 869 (8th Cir. 1994).  The evidence, taken in the light most favorable to the Plaintiff, shows Smith had learned from Steve that Nicholas and Clinton had seen the Plaintiff near the property line to Steve's land.  Smith observed the footprints in the location where the Plaintiff was seen. Smith viewed a videotape of the Plaintiff in that area.  Based on this information, Smith believed the Plaintiff had violated the Protection Order, and completed an investigative report. After reviewing Smith's report, Sondreal signed a criminal complaint charging the Plaintiff with violation of the Protection Order, a Class I misdemeanor.  A magistrate found probable cause and issued an arrest warrant.  Based on the undisputed facts, no reasonably well-trained officer in Smith's position would have known the arrest was illegal.  Thus, the warrant shields Smith from liability for executing it, and Smith is entitled to qualified immunity on this claim.

### b.  Eighth Amendment Claim

The Plaintiff speculated during his deposition that Smith violated his rights by seeking an arrest warrant without bond.  See Ferebee Dep. (doc. #127-2) at 53:19-54:6.  Liberally construing this allegation as presenting a claim for violation of the Eighth Amendment prohibition against excessive bail, the Court concludes Smith is entitled to qualified immunity.

21

The Eighth Amendment provides that excessive bail shall not be required, and this right is assumed to apply to the States under the Fourteenth Amendment.  U.S. Const. amend. VIII; Pilkinton v. Circuit Court, 324 F.2d 45, 46 (8th Cir. 1963).  The Plaintiff can make a claim against Smith only by presenting evidence that Smith had some personal involvement in the claimed violation.  See Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (stating that a prisoner must allege defendant's personal involvement or responsibility for constitutional violations to present a section 1983 claim).  Bail is set by magistrates, not by sheriff's deputies.  The Plaintiff has not presented evidence that Smith had any part in the magistrate's decision regarding bond after the Plaintiff's arrest.  Thus, the Plaintiff has not stated an Eighth Amendment violation, and Smith is entitled to qualified immunity on this claim.

### c.  Sixth Amendment Claim

Just as he did with regard to the Fire Incident, the Plaintiff again has claimed during his deposition that his constitutional rights were violated when he was not informed of the charges against him at the time Smith arrested him.  See Ferebee Dep. (doc. #127-2) at 54:9-55:17.  Liberally construing the allegation, the Court again concludes the Plaintiff presents a claim for violation of his Sixth Amendment right to be advised of the nature of the charge against him.

The Court has addressed this claim above, with regard to the Fire Incident.  The Court's reasoning and rationale as to that claim are equally applicable here.  Accordingly, rather than repeating the analysis of that claim here, the Court hereby expressly adopts the discussion about the Plaintiff's Sixth Amendment claim against Smith with regard to the Fire Incident.  See § A.1.b. (above).  Thus, the Court concludes the Plaintiff has failed to allege a violation of Sixth Amendment rights, and Smith is entitled to qualified immunity.

### 2.        False Statement Claim Against Correctional Officer Steele

The Plaintiff has claimed, in his memorandum in response to the motion for summary

judgment, that "regarding Officer Steele, a jury should decide why he falsified Ferebee's

Warrant of Arrest."  See doc. #154 at 17.[8]  The Plaintiff cites SDCL 22-11-23.1 for the

proposition that filing a forged document is a felony in South Dakota.  However, "[s]tate law

violations do not form the basis for imposing § 1983 liability."  Windle v. City of Marion,

Ind., 321 F.3d 658, 662 (7th Cir. 2003).  "Even a bad faith violation of state law fails to reach

the level of a constitutional violation."  Friedman v. City of Overland, 935 F. Supp. 1015, 1021

(E.D. Mo. 1996) (citing Anderson v. Douglas County, 4 F.3d 574, 577 (8th Cir. 1993);

McNees v. Mountain Home, Ark., 993 F.2d 1359, 1361 (8th Cir. 1993); Chesterfield Dev.

Corp. v. City of Chesterfield, 963 F.2d 1102, 1105 (8th Cir. 1992)); see also Davis v. Scherer,

468 U.S. 183, 194-96 (1984) (noting a state actor's violation of state law cannot form the basis

of section 1983 liability).  Accordingly, the Plaintiff has failed to allege a constitutional

violation, and Steele is entitled to qualified immunity on this claim.

### 2.        Correctional Officers Steele, Anderson, and Melton

The Plaintiff claims his constitutional rights were violated when he was detained at the

Jail for five to seven hours after a magistrate ordered him released on his own recognizance.

See Ferebee Dep. (doc. #127-2) at 60:5-20, 63:1-2.  As noted in footnote 8, the Plaintiff

speculated that Steele was the jailer responsible for the delay, but admits he has no proof of

---

[8]The Plaintiff also has "speculat[ed]" that Steele was the jailer primarily responsible for delaying the Plaintiff's release from jail on March 17, 2003, but admits he does not "have any proof of that."  See Ferebee Dep. (doc. #127-2) at 63:9-15.  Because the Plaintiff makes the same claim against Anderson and Melton, the Court will analyze these claims together.

that claim.  The Plaintiff also has stated that he sued Melton, Anderson, and Steele because they were on duty during the time of the delay.  See id. at 61:7-18, 62:6-11, 63:9-15.

Liberally construed, the Plaintiff's allegations appear to possibly present a claim that Melton, Anderson, and Steele violated his Fourteenth Amendment due process rights.  "In order to make out a case of municipal liability against" a county, the Plaintiff "must show that his constitutional injury was caused by a policy or custom of the municipality, the implementation of which amounted to deliberate indifference to his constitutional rights." Lund v. Hennepin County, 427 F.3d 1123, 1125 (8th Cir. 2005).  In a case similar to the instant one, the Eighth Circuit opined that, in order for the Plaintiff "to prove his due process rights were violated and that the County should be held responsible, he must show both that his detention shocks the conscience and that it was caused by a county policy or custom evidencing a level of culpability akin to criminal recklessness." Id. at 1127.  The Plaintiff has not presented any evidence to show that the delay in his release was the result of any "deliberate indifference" by these three Defendants.  Accordingly, the Plaintiff has failed to even allege a constitutional violation.  Furthermore, even assuming the Plaintiff has alleged a constitutional violation, the Plaintiff has not cited any authority to support the proposition that a five- to seven-hour delay in release might "shock the conscience."  In fact, the Court's research indicates the Eighth Circuit has concluded that delays of twenty-four hours, ten hours, and six days were insufficient to present a section 1983 claim for a due process violation.  See e.g., Russell v. Hennepin County, 420 F.3d 841, 845-47 (8th Cir. 2005) (concluding evidence that release was delayed by six days due to administrative error was insufficient to show that the moving force behind the delay was a county policy whose inadequacy was "both obvious

24

and likely to result in the alleged deprivation of constitutional rights" or that there was a county custom having the same effect); <u>Golberg v. Hennepin County</u>, 417 F.3d 808, 810-12 (8th Cir. 2005) (concluding ten-hour delay did not show deliberate indifference by municipality because that standard requires more than mere unreasonableness or negligence, but instead must rise to a level of "criminal recklessness"); <u>Luckes v. Hennepin County</u>, 415 F.3d 936, 939-40 (8th Cir. 2005) (concluding that, regardless of whether plaintiff could show deliberate indifference by county defendant, evidence of a twenty-four-hour delay in release due to computer system malfunction did not state a constitutional violation because it was not conscience-shocking).  Thus, because the Plaintiff has failed to state a constitutional violation, or that this delay in releasing him from jail shocks the conscience, Melton, Anderson, and Steele are entitled to qualified immunity on this claim.

## C.    Counterclaims

Defendants Strain, Lehmann, O'Connor, Smith, Melton, Anderson, and Steele have asserted counterclaims against the Plaintiff for barratry under SDCL 20-9-6.1.  At the aforementioned hearing regarding the motion for summary judgment, wherein the Court noted its concerns about the qualified immunity issue, the current Defendants indicated they would seek to pursue their barratry claims if the case progressed to trial.  Also, although the Court ordered "[a]ll remaining parties or their counsel" to attend that hearing, <u>see</u> doc. #166, Strain, Lehmann, and O'Connor did not attend the hearing, indicating to the Court that they no longer considered themselves parties to this action.[9]  Although the Court used its discretion and

_____

[9]In noting the absence of counsel for Strain, Lehmann, and O'Connor from the hearing, the Court in no way intimates its dissatisfaction with counsel for not attending; the Court notes

exercised supplemental jurisdiction over the Plaintiff's trespass claim, above, it did so because the "federal and state claims relied on the same core facts." See Ivy, 115 F.3d at 552-53. However, the Court believes that any state-law claim for barratry should be dismissed without prejudice, because the barratry claim does not rely on the same core set of facts. Rather, claims for barratry may well require inquiry into matters not yet addressed in this case. For this reason, the Court concludes it must decline to exercise supplemental jurisdiction over the barratry claims, and these claims are dismissed without prejudice.

### III.  Conclusion

The Plaintiff has failed on all his claims to present facts showing the officers' conduct violated a constitutional right, as required to survive a motion for summary judgment based on qualified immunity. Saucier, 533 U.S. at 201. Further, even assuming the facts alleged demonstrated a constitutional violation, the Plaintiff has failed to demonstrate that any of the allegedly violated rights were clearly established at the time they occurred. Accordingly, it is hereby

ORDERED that the Motion for Summary Judgment [doc. #135] by Defendants Jeromey Smith, Jeanie Melton, Mike Anderson, and Mark Steele is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment on Grounds of Qualified Immunity [doc. #173] by the Defendants is GRANTED.

IT IS FURTHER ORDERED that the Plaintiff's motion for a hearing [doc. #157] is DENIED.

---

the absence only as an indication that, due to the grant of their motions for summary judgment or to dismiss, these Defendants no longer wish to maintain their barratry claims in this Court.

IT IS FURTHER ORDERED that the barratry claims asserted by Strain, Lehmann,

O'Connor, Smith, Melton, Anderson, and Steele are dismissed without prejudice.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58(a),

the Court will enter judgment in a separate document.

Dated this 28th day of November, 2006.

BY THE COURT:


/s/ *Andrew W. Bogue*
ANDREW W. BOGUE
SENIOR DISTRICT JUDGE